UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FREEDOM MORTGAGE CORPORATION,

                        Plaintiff,                   **REPORT AND RECOMMENDATION**

v.                                             1:23-cv-143-JLS-JJM

ANDREA P. ROMAN and
PETER A. ROMAN,

                        Defendants.
_____

        Before the court is plaintiff Freedom Mortgage Corporation's ("Freedom Mortgage") motion for a default judgment [10] pursuant to Fed. R. Civ. P. ("Rule") 55(b), which has been referred to me by District Judge John L. Sinatra, Jr. for initial consideration [14]. Having reviewed the motion, I recommend that it be granted in part and denied in part.

## BACKGROUND

        Freedom Mortgage commenced this action on February 14, 2023, pursuant to Article 13 of the New York Real Property Actions and Proceedings Law ("RPAPL"), to foreclose a mortgage encumbering 147 Clarendon Street, Albion, NY 14411, together with the land, buildings, and other improvements located thereupon (the "Property"). Complaint [1].[1] Defendants Andrea P. Roman and Peter A. Roman (the "Romans") did not answer the complaint, nor have they otherwise appeared in this action. At plaintiff's request [8], a clerk's entry of default was entered against defendants on May 4, 2023. [9].

---

[1] Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

Freedom Mortgage now moves for a default judgment against the Romans pursuant to Rule 55(b). In an abundance of caution, I gave the Romans an opportunity to respond to the motion. Text Order [15] dated 6/28/2023. The deadline has since passed, and no response has been received.

As alleged in Freedom Mortgage's Complaint, on August 31, 2020, Andrea Roman executed and delivered a note to Premium Mortgage Corp., in which she promised to pay $95,959.00 plus interest. Complaint [1], ¶6; Note [1] at 9-12; [10-5] at 1-4.  On the same date, Peter Roman and Andrea Roman executed a mortgage encumbering the Property in favor of Mortgage Electronic Registration Systems, Inc., as nominee for Premium Mortgage Corp., and its successors and assigns for the same amount. [1], ¶7. The mortgage was duly recorded with the Orleans County Clerk. Id.; Mortgage and Receipt [1] at 15-27; [10-6] at 1-13.  On August 8, 2022, Mortgage Electronic Registration Systems, Inc. executed an assignment of mortgage in favor of Freedom Mortgage, and such assignment was duly recorded. [1], at 2, ¶8, 28; [10-6] at 14.

Freedom Mortgage alleges that, on September 1, 2022, the Romans failed to make the required payment under the terms of the note and mortgage or any subsequent payments. [1], ¶9.  As of the date of the Complaint, the amount due and owing on the note was $92,221.01 plus interest as accruing from August 1, 2022 at an annual rate of 3.25%. Id., ¶10.  Freedom Mortgage alleges compliance with the notice provisions of the mortgage and RPAPL §§1304 and 1306. Id., ¶12. That is, a 90-day notice was served on defendants by regular and registered or certified mail on September 30, 2022. [10-3] at 3, ¶9; 18-59. A notice of default was mailed to the Romans on December 16, 2022. Id. at 2, ¶7, 12-16.  On March 3, 2023, an RPAPL §1303 notice, an RPAPL §1320 notice, and New York Civil Practice Law and Rule ("CPLR") §3012-b

certificate of merit were served on defendants along with the summons and complaint. Cheli Declaration [10-13] at 1-2, ¶3, 3-4. Freedom Mortgage filed the Complaint and Notice of Lis Pendens on February 14, 2023. [1, 4]. A Notice of Pendency was filed with the Orleans County Clerk on February 21, 2023. [10-11].

Freedom Mortgage now seeks judgment accelerating the maturity of the debt, assessing an amount due including principal interest, late charges, taxes, assessments, insurance, maintenance and preservation costs, sales expenses, and attorney's fees, and ordering the foreclosure and sale of the Property in accordance with RPAPL article 13. [1] at 3-4; Proposed Judgment [10-1]. It itemizes certain of these costs as: $97,398.40 in principal and interest through May 21, 2023; $1,213.05 for costs and disbursements (*see* [10-15]); and $5,650.00 in legal fees. Id. at 5. As to attorney's fees, plaintiff's counsel avers that his firm's fee is a "flat fee" which represents reasonable compensation inclusive of several services relating to preparing for and prosecuting this foreclosure action, as well as for future services relating to the preparation for and sale of the Property. Zamenhof Declaration [10-16] at 1-3.

## DISCUSSION

**A.    Default Judgment - Liability**

"Once default is entered, the allegations of the complaint establishing the defendants' liability are accepted as true, except for those relating to the amount of damages." Magi v. United Merchant Asset Recovery of WNY, LLC, 2021 WL 2269478, *1 (W.D.N.Y. 2021) (Sinatra, J.); *see also* Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("a party's default is deemed to constitute a concession of all well pleaded allegations of liability"). Nonetheless, "prior to entering default judgment, a district court is required to determine whether the [plaintiff's] allegations establish the [defendant's

liability] as a matter of law." City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011).

In addition, given the "oft-stated preference for resolving disputes on the merits" (Enron Oil Corporation v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993)), courts have discretion to consider a number of factors before granting a default judgment. See Trustees of Local 7 Tile Industrial Welfare Fund v. Caesar Max Tile Corporation, 2014 WL 991723, at *6 (E.D.N.Y. 2014) (enumerating factors that can be considered). Primarily, courts in this Circuit "[are] guided by the same factors which apply to a motion to set aside entry of default". Krevat v. Burgers to Go, Inc., 2014 WL 4638844, *5 (E.D.N.Y. 2014); see Su v. Agave Elmwood Inc., 2023 WL 5105420, *3 (W.D.N.Y. 2023). Those factors are "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to plaintiff's claims; (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment". Id. (internal quotations omitted). These factors frame my analysis.

1. **Willfulness**

The first factor considers whether the Romans' default was willful. This element is generally satisfied where, as here, the defendants have made no attempt to appear or respond in the action. See Su, 2023 WL 5105420 at *3 ("because Defaulting Defendants have failed to defend this case, comply with Court orders, or file opposition to the instant motion, th[e] element [of willfulness] has been met); Krevat, 2014 WL 4638844 at *6 ("[defendants'] failure to appear, failure to respond to the Complaint, and failure to respond to the instant motion sufficiently demonstrate willfulness"); Mason Tenders District Council v. Duce Construction Corporation, 2003 WL 1960584, *2 (S.D.N.Y. 2003) ("[d]efendants, having failed to respond in any way to

the Summons and Complaint or otherwise make any appearance in this action and having failed to provide any explanation for its failure to defend, have defaulted willfully"). I also note a comment in the process server's affidavit indicating that Ms. Roman was in the process of moving from the Property to an apartment ([10-9] at 1), which seems to evidence the Romans' acquiesce in the pending foreclosure.

    **2. Meritorious Defenses**

While a defendant's failure to answer "weighs in favor of granting a default judgment" (Krevat, 2014 WL 4638844 at *6), the Court must go on to "assess whether Plaintiff's allegations, accepted as true, demonstrate [the] Defaulting Defendant's liability as to Plaintiff's alleged causes of action". Su, 2023 WL 5105420 at *4.

In a foreclosure action under New York law, "a plaintiff establishes a prima facie entitlement to judgment once it submits the mortgage, the unpaid note and evidence of the default". Freedom Mortgage Corp. v. Elmore-Hernandez, 2019 WL 2779320, *3 (E.D.N.Y. 2019), adopted 2019 WL 2775620 (E.D.N.Y. 2019). Here, Freedom Mortgage has produced a copy of the mortgage on the Property as executed by the Romans ([1] at 15-27), a copy of the note executed by Andrea Roman ([1] at 9-12), a copy of the assignment of the mortgage to Freedom Mortgage ([1] at 28), and an affidavit from Angela D. Roberts, an FCL Specialist II for Freedom Mortgage. [10-3] at 1-5. In her affidavit, Roberts avers that the payments due under the note were not made on September 1, 2022 and thereafter (id. at 1-5) and attaches business records in support. Id. at 8-10. Freedom Mortgage has thus established a prima facie entitlement to a foreclosure judgment. See Freedom Mortgage, 2019 WL 2779320 at *3; OneWest Bank, N.A. v. Conklin, 310 F.R.D. 40, 44 (N.D.N.Y. 2015). As the Romans have not answered the

complaint nor opposed the motion for default, they have failed to rebut this presumption. *See* Freedom Mortgage, 2019 WL 2779320 at *3.

Other courts in this Circuit have gone further to affirmatively search the record for potential deficiencies under RPAPL Article 13, such as in the service of process, service of statutory notice, and the filing of the notice of pendency. *See* Freedom Mortgage Corporation v. Monteleone, 628 F. Supp. 3d 455, 465 (E.D.N.Y. 2022) (denying default judgment for various service issues); OneWest Bank, N.A. v. Conklin, 310 F.R.D. 40, 44 (N.D.N.Y. 2015) (listing potential deficiencies under Article 13 and finding compliance therewith).  To the extent such an inquiry is required on an unopposed motion for default judgment, no such deficiencies appear here.

### 3. Prejudice

Finally, the court should consider "the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." Krevat, 2014 WL 4638844 at *5.  Here, given "[the] Defaulting Defendants' failure to defend this matter and refusal to pay . . . , Plaintiff is unlikely to recover if the motion for default judgment is not granted". Su, 2023 WL 5105420 at *6.  I further note that the Property has potentially been vacant since March of 2023 (*see* [10-9] at 1), which poses ongoing risks of neglect, particularly as the winter months approach.

In sum, Freedom Mortgage has established its entitlement to default judgment, and all three factors weigh against setting aside the Romans' default. Therefore, I recommend that Freedom Mortgage's motion be granted, and that default judgment of foreclosure and sale be entered as against the Romans. *See* United States v. Estate of Callard, 2017 WL 685604 at *8

(E.D.N.Y. 2017) ("once a plaintiff mortgagee in a foreclosure action has established a prima facie case by presenting a note, a mortgage, and proof of default, it has a presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor.")

B.   **Default Judgment - Damages**

Once entitlement to default judgment is established, "a court must ensure that there is an adequate basis for the damages sought by a plaintiff before entering judgment in the amount demanded." Bricklayers Insurance & Welfare Fund v. Everest Masonry Construction, 2017 WL 4179853, *3 (E.D.N.Y.), adopted, 2017 WL 4217116 (E.D.N.Y. 2017). "The court has an independent obligation to assess requests for damages, which usually must be established by the plaintiff in an evidentiary hearing." Magi, 2021 WL 2269478 at *2.

However, no hearing is necessary if, "based upon a review of detailed affidavits and documentary evidence, the court is assured that there is an adequate basis for the damages sought". Bricklayers Insurance & Welfare Fund, 2017 WL 4179853 at *3; see also Magi, 2021 WL 2269478 at *2 ("[t]he Second Circuit has allowed damages determinations without a hearing where detailed affidavits and documentary evidence provide the court with a sufficient basis for assessing damages"). The court must be able to ascertain damages with "reasonable certainty". Hosking v. New World Mortgage, Inc., 570 Fed. Appx. 28, 31 (2d Cir. 2014). The party seeking recovery "bears the burden of adequately documenting and itemizing the costs requested." Ganci v. U.S. Limousine Service Ltd., 2015 WL 1529772, *8 (E.D.N.Y. 2015). Conversely, "[a] party is not entitled to recover costs for which it provides inadequate substantiation". Freedom Mortgage, 2019 WL 2779320 at *6 (citing cases). However, all reasonable inferences from the

evidence offered are drawn in favor of the moving party. Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

In general, "[t]he note and mortgage, as the governing instruments, should determine any default damages". OneWest Bank, 310 F.R.D. at 45. Here, the note allows Freedom Mortgage to recover "all of its costs and expenses in enforce this Note to the extent not prohibited by applicable law". [1] at 10. The mortgage provides that "[i]n any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees". Mortgage [1] at 24, §22.

Freedom Mortgage seeks the following damages, costs, and fees:

- $750 for statutory "fees and commissions" to the referee, as pursuant to NYCPLR §8003(b), plus $250 for any and each postponement and adjournment of sale;

- the "reasonable expenses of the sale", including cost of advertising;

- "all taxes, assessments, sewer rents, water rates and any other charges placed upon the premises by any municipal authorities . . . with such interest or penalties";

- $1,213.05 in costs and disbursements;

- $97,398.40 in principal, interest, and other charges through May 21, 2023, with additional interest as accrued through the date of entry of judgment (at 3.25%), and interest as accruing thereafter at the statutory post-judgment rate;

- $5,650.00 as "reasonable legal fees";

- the amount of any advances for taxes, insurance, amounts due to prior mortgagors, and for maintenance of the premises pending sale. Proposed Judgment of Foreclosure and Sale [10-1] at 4-5.

1.      **Unpaid Principal, Interest, and Escrow Advances**

In her affidavit, Ms. Roberts avers that there was unpaid principal balance of $92,221.01 on the note as of August 1, 2022, that interest continued to accrue at an annual rate of 3.25% such that, as of May 20, 2023, an additional $2,403.95 was owed. [10-3] at 4. She further avers that Freedom Mortgage incurred an escrow advance of $2,544.89, representing payments for taxes ($4,118.59), hazard insurance ($640.00), mortgage insurance ($325.97) in excess of the escrow credit ($2,539.67). Id. She also claims a $120.00 charge for property inspections and $108.55 for late charges prior to acceleration. Id. Attached to her affidavit is a spreadsheet reflecting the payment and transaction history for the loan. [10-3] at 8-10.

I conclude that Roberts' affidavit and attached transaction history, in addition to the note and mortgage documents, sufficiently establish that there existed an outstanding principal balance of $92,221.01 as of August 1, 2022, and that such balance continued to accrue interest at the annual rate of 3.25%, or approximately $8.21 per day. Id. at 8. The transaction history also reflects payments for taxes and insurance in the amounts claimed. Id. at 9-10. Freedom Mortgage also seeks an award of post-judgment interest, which they are entitled to by statute. See 28 U.S.C. §1961(a) ("interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding"); Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008) (holding that post-judgment interest is governed by federal statute in a diversity action and is mandatory). I therefore recommend that those amounts be awarded, subject to the appropriate calculation and certification after sale.

However, Freedom Mortgage does not provide any substantiation or explanation for the alleged property inspection charge nor the late charges. While section 6(A) of the note provides for a late charge of 2% for each overdue payment of principal (Note [10-5] at §6), Freedom Mortgage fails to establish the amount of any overdue payment for which it is claiming a late charge nor otherwise explain how it reached the figure of $108.55. Freedom Mortgage also fails to substantiate the charge of $120.00 for property inspections. Therefore, I recommend that those charges be denied, without prejudice to renewal upon appropriate substantiation. *See* Freedom Mortgage, 2019 WL 2779320, at *5 (denying without prejudice to the extent plaintiff failed to provide documentation in support of its request for late charges or property inspections).

2.    **Costs and Disbursements**

"In this Circuit, reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable." Freedom Mortgage, 2019 WL 2779320 at *6; *see* LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998). Freedom Mortgage submits an affirmed bill of costs indicating a $402.00 filing fee, $715.00 in service fees, $60.00 in skip trace fees, and $36.05 for filing of the notice of pendency. [10-15] at 1. This affirmation is accompanied by appropriate invoices and receipts. Id. at 2-6. I accordingly recommend that Freedom Mortgage be awarded $1,213.05 in costs and disbursements.

3.    **Appointment of Referee, Referee's Fee, and Other Costs of Sale**

Freedom Mortgage seeks the appointment of a referee (specifically, Kenneth Graber, Esq. of Lancaster) to effect the sale of the Property, a statutory fee and commission for the referee of $750, another $250 payable if a scheduled sale is cancelled or postponed, other

"reasonable expenses of the sale" such as cost of advertising, and an award for payment of "all taxes, assessments, sewer rents, water rates and any other charges placed upon the premises by any municipal authorities having priority over the foreclosed mortgage". *See* [10-1] at 2-5.

Courts have found the appointment of a referee, the payment of a $750 statutory fee, and an award for costs of sale to be appropriate in foreclosure cases. *See* Windward Bora LLC v. Baez, 2020 WL 4261130, *6 (E.D.N.Y. 2020) ("[b]ecause Plaintiff has established its right to foreclose on the Subject Property due to Defendant['s] . . . default, the Court will enter a judgment of foreclosure and sale, and appoint . . . [a] Referee to conduct the sale. The Court also finds $750 to be an appropriate fee for the Referee"); Windward Bora LLC v. Thomas, 2022 WL 14731628, *11 (E.D.N.Y. 2022) (appointing referee, awarding $750 statutory fee, and granting additional costs of sale/advertising). An additional fee of $250 for each adjournment or cancellation of sale by a person or entity other than the referee, without sufficient notice, may also be appropriate as long as the property is sold for an amount exceeding $50,000. *See* N.Y. C.P.L.R. §8003(b); JP Morgan Chase Bank v. Pizzini, 12 Misc. 3d 520, 528, 813 N.Y.S.2d 649, 654 (Bronx County Sup. Ct. 2006).

The caselaw further indicates that an award for payment of any outstanding taxes, assessments, sewer rents, water rates or other charges which are secured by liens on the Property having priority over the instant foreclosed mortgage is appropriate. *See* Secretary of U.S. Department of Housing and Urban Development v. Rhodie as Co-Trustee of Lornice Rhodie Revocable Living Trust, 2022 WL 3213048, *5 (E.D.N.Y. 2022). Accordingly, I recommend that the requests for an appointment of referee, an award for a $750 fee, costs of sale, and supplemental fees be granted upon appropriate presentment to and certification by the referee.

However, plaintiff does not supply a resume or any other explanation as to why Mr. Graber is qualified to act as referee. Nor does the court find any cases in which Mr. Graber has been appointed as a referee. *Cf.* Windward Bora LLC v. Thomas, 2022 WL 14731628, *10 (E.D.N.Y. 2022). Therefore, I recommend that Freedom Mortgage's specific request to appoint Mr. Graber as referee be denied, without prejudice to renewal upon a supplemental submission containing Mr. Graber's qualifications, as well as the names and qualifications of two other candidates qualified and willing to act as referee with respect to the sale of the Property. *See* Windward Bora, LLC v. Thompson, 2020 WL 1242828, *6 (E.D.N.Y. 2020); Gustavia Home, LLC v. Bd. of Managers of Oceana Condominium No. Two, 2019 WL 4194273, *2 (E.D.N.Y. 2019).

4.   **Attorney's Fees**

Finally, Freedom Mortgage seeks an award of $5,650.00 as "reasonable legal fees" associated with the foreclosure and sale. [10-1] at 5. Plaintiff's counsel, Alex Zamenhof, Esq., avers that his firm's fee is a "flat fee" which represents reasonable compensation for the performance of several services relating to preparing for and prosecuting this foreclosure action, as well as for future services relating to the preparation for and sale of the Property. Zamenhof Declaration [10-16] at 1-3. Mr. Zamenhof avers that "[b]ecause this office charges a flat fee for foreclosure work, individual time sheets are not maintained". Id. at ¶6.

As Freedom Mortgage indicates, the Note and Mortgage both provide for an award of attorney's fees. *See* Note [10-5] at 2, ¶6(E), Mortgage [10-6] at 9, ¶19(c); Billybey Marina Servs., LLC v. Affs. Afloat, Inc., 2016 WL 1266608, *4 (E.D.N.Y. 2016) ("[i]n New

York, a party is entitled to recover attorneys' fees if such recovery is 'authorized by agreement between the parties'").

However, the Second Circuit has long required that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . document the application with contemporaneous time records . . . [that] specify, for each attorney, the date, the hours expended, and the nature of the work done". N.Y. State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); see Wilmington Savings Fund Society, FSB v. White, 2023 WL 3765157, *3 (E.D.N.Y. 2023). "In general, courts in this Circuit will not award attorney's fees assessed at a flat-rate unless the supporting documentation is detailed enough to satisfy the Second Circuit's requirement that 'attorneys' fees must be based on contemporaneous time records specifying relevant dates, time spent and work done." Nationstar Mortgage LLC v. Atanas, 285 F. Supp. 618, 624 (W.D.N.Y. 2018). This information allows the court to perform the required "lodestar" calculation and determine a presumptively reasonable fee, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case". Millea v. Metro-North Railroad Company, 658 F.3d 154, 166 (2d Cir. 2011).

Here, Mr. Zamenhof fails to provide any information about the number of hours his firm spent on any particular task, the law firm personnel who performed any such task, their billing rates, or the dates such work was performed. I am therefore unable to pass on the reasonableness of his firm's proposed fee. While the courts are given significant discretion in the determination of a reasonable attorney's fee, they are bound to comply with the legal standard that has been in place in this Circuit for 40 years. See Agudath Israel of America v. Hochul, 2023 WL 2637344, *1 (2d Cir. 2023). Mr. Zamenhof's firm must have been aware of this standard, and the cases cited by Freedom Mortgage do not suggest an alternative one. See Wells Fargo

Bank, N.A. v. Barnes, 2018 WL 6028050, *6 (N.D.N.Y. 2018) (calculating the lodestar amount using the provided information regarding time expenditures and billing rates); OneWest Bank, N.A. v. Denham, 2015 WL 5562980, *11 (E.D.N.Y. 2015) (finding that while "the fee request is not a model of compliance with the Second Circuit's guidance concerning contemporaneous billing records", it provided a "breakdown of the specific attorneys and legal assistants who worked on the case, their respective levels of experience, and the specific tasks each one performed, [and] . . . the specific hours spent on each task").

Accordingly, I recommend that Freedom Mortgage's request for an award of attorney's fees be denied, without prejudice to reapplication with the appropriate information. In so doing, counsel should be mindful that the courts view non-contemporaneous, post-hoc recreations of time records with skepticism. See Handschu v. Special Services Division, 727 F. Supp. 2d 239, 249 (S.D.N.Y. 2010).

## CONCLUSION

For these reasons, I recommend that plaintiff's motion for default judgment [10] be granted to the extent that it seeks:

- a default judgment of foreclosure against defendants;

- a judgment of foreclosure and sale;

- an appointment of a referee to effect such sale (subject to the presentment of three qualified candidates and their qualifications);

- payment of a $750 statutory fee to the referee, as well as a $250 cancellation fee and any reasonable expenses of the sale to the extent certified by the referee;

- an award of $1,213.05 for costs and disbursements;

      - an award of $92,221.01 reflecting the unpaid principal balance as of August 1, 2022, and interest accruing at the annual rate of 3.25%, or approximately $8.21 per day, from that date until the date judgment is entered;

      - an award of $2,544.89 reflecting the escrow advance;

      - an award of the amount of any advances for taxes, insurance, amounts due to prior mortgagors, and for maintenance of the premises pending sale, as certified by the referee; and

      - an award of post-judgment interest through the date of sale.

I recommend that the motion otherwise be denied, that is, with respect to the requested awards for late charges, property inspections, and attorney's fees, as well as the appointment of Mr. Graber as referee, without prejudice to reapplication with the appropriate substantiation.

      Unless otherwise ordered by District Judge John L. Sinatra, Jr., any objections to this Report and Recommendation must be filed with the clerk of this court by November 14, 2023. Any requests for extension of this deadline must be made to District Judge Sinatra. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek, 838 F. 2d at 58; Thomas v. Arn, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

      The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each

objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: October 31, 2023

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge
